UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TINA PITTS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CAUSE NO. 3:05-CV-38-RM |
| ) | |
| ELKHART COUNTY, ) | |
| ) | |
| Defendant ) | |

OPINION and ORDER

On January 18, 2005, Tina Pitts filed a complaint against the Elkhart County Sheriff's Department and the City of Goshen alleging violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981 for harassment and racial discrimination. On February 21 and April 4, 2005, Ms. Pitts dismissed her complaint against the City of Goshen and the Sheriff's Department, respectively, and filed an amended complaint naming Elkhart County as the sole Defendant. She later filed a second amended complaint adding claims against Elkhart County for racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et. seq*[1]. Elkhart County seeks summary judgment. For the following reasons, the Court grants the motion.

Ms. Pitts, an African-American woman, was first employed by the Elkhart County Sheriff's Department on September 20, 2003, as a part-time supervisor

---

[1] In her response to defendant's summary judgment motion, Ms. Pitts elected not to pursue her Section 1981 claims, so only the Title VII claims remain at issue.

1

at the work release center where she supervised inmates and handled their booking and release. On December 22, 2003, she received a full-time position as a first-shift corrections officer at the Elkhart County Jail and remained in that position until her termination on August 17, 2005. Sheriff Michael Books reviewed Ms. Pitts' entire application packet and background and approved her for both of these positions.

Ms. Pitts received several reprimands during her tenure as a corrections officer. On August 20, 2004, she received and signed a written reprimand in the form of a formal action notice for failing to complete paperwork and leaving it for the next shift to complete. In her memo to her supervisor Sgt. Jayna Chenowith, Ms. Pitts stated: "I assumed that because it was after 1500 hours that the second shift was responsible for doing the intake, I was obviously wrong. I apologize for any inconvenience my mistake may have caused second shift."

Ms. Pitts received a second reprimand several weeks later for being an hour to an hour and a half late to two separate shifts. On May 28, 2005, Ms. Pitts was issued a formal action notice for misrepresenting the reason she had missed work the day before. After Ms. Pitts called in sick, three other officers informed Sgt. Chenowith that Ms. Pitts had been trying to find a replacement for that day and they believed that she was being dishonest about calling off due to sickness. As a result, Ms. Pitts received a written reprimand and a three-day suspension. Attached to the written reprimand document was an "early warning checklist" that Sgt. Chenowith prepared to document Ms. Pitts' absenteeism pattern. The form

reported that Ms. Pitts had taken twelve sick days in a four month period, and on it the following boxes were checked: unauthorized sick leave, excessive sick leave, a pattern of Monday/Friday absences or both, frequently leaving work early, absenteeism rate for minor illness higher than other workers, improbable excuses for poor job performance, difficulty in recalling instruction, nurtures unreasonable resentments, and avoids associates/isolates self.

Ms. Pitts' employment was terminated following an internal affairs investigation into allegations that Ms. Pitts had violated various Sheriff's Department policies relating to her association with an inmate that she knew from outside the jail. It was alleged that Ms. Pitts improperly met with and advised inmate Denay Tuggle on her criminal case, then tried to cover up her actions. Cpl. Connors was the first to question Ms. Pitts for speaking with Ms. Tuggle, but it was Det. Osterday who investigated the allegations. Det. Osterday submitted to Sheriff Brooks the investigation file, which consisted of the disposition, the materials provided to Det. Osterday before the investigation, all statements and documents generated during the investigation, and four audio cassette tapes containing Det. Osterday's three-hour-and-twenty-minute internal affairs interview with Ms. Pitts.

Sheriff Books made the decision to terminate Ms. Pitts' employment. Ms. Pitts' termination notice stated that she was being terminated from employment at the Sheriff's Department as a result of the internal affairs investigation, the seriousness of the violations that had been substantiated, and Ms. Pitts'

3

disciplinary history, listing the August 19, 2004 and May 28, 2005 formal action notices as examples.

    Ms. Pitts says the Sheriff's Department has created a cover-up to support its contention that Ms. Pitts was neither discriminated against because of her race nor retaliated against for engaging in protected activity. Ms. Pitts claims that the investigation into her interaction with Ms. Tuggle was prompted by Cpl. Connors, who held racial animus toward Ms. Pitts and other African Americans, including inmates and visitors. This is evidenced, according to Ms. Pitts, by the disparate treatment she received when compared with other Caucasian corrections officers. Ms. Pitts also alleges that Cpl. Connors was unhappy with Ms. Pitts for engaging in protected activity and retaliated against Ms. Pitts as a result. Ms. Pitts relates that Cpl. Connors once told an inmate that Ms. Pitts was responsible for him being written up and thrown in the hole. The inmate later approached Ms. Pitts in a hostile fashion and Cpl. Connors admitted lying to him about Ms. Pitts. Cpl. Connors also found ways to exclude Ms. Pitts from weekend efforts to have lunches brought in for the officers and to deny her breaks on more than thirty occasions. Cpl. Connors also tried to get Ms. Pitts transferred to a different shift. Ms. Pitts claims that further evidence of Cpl. Connors' racial prejudice is an incident where she laughed when a Caucasian officer made obscene comments about lynching African American inmates on the courthouse lawn. Finally, Cpl. Connors in her deposition ultimately admitted using the term "nigger" outside of the workplace.

These incidents prompted Ms. Pitts to submit a memo to Lt. Warden Fred Call and Cpt. Rogers complaining about Cpl. Connors on July 8, 2005. Ms. Pitts claims that Cpl. Connors found out about this memo and threatened Ms. Pitts with being written up if she didn't change the reference line of her complaint from "07/08/05 Harassment Incidents" to "07-08-05 Ward 16/Denay Tuggle". Days later, Cpl. Connors submitted a report to Cpt. Rogers about Ms. Pitts' interaction with Ms. Tuggle. Ms. Pitts further claims that Cpl. Connors coerced Ms. Tuggle into lying about her conversation with Ms. Pitts. "Connors insinuated that Tuggle's stay in the jail could be made easier if she cooperated with the Sheriff's Department in their attempt to get [Ms. Pitts] terminated."

Ms. Pitts claims Cpl. Connors told Ms. Tuggle that "they" were trying to fire Ms. Pitts for a long time because she filed suit against the Elkhart County Sheriff's Department. Cpl. Connors then allegedly prepared a statement and told Ms. Tuggle to sign it without allowing her to read it first. Ms. Pitts later asked Ms. Tuggle to execute another written statement, outlining what really took place during their conversation, and Ms. Tuggle agreed. This later statement is the one Ms. Tuggle now claims was a true and accurate depiction of her discussion with Ms. Pitts. Ms. Pitts says her interaction with Ms. Tuggle was only to console her and tell her it would be OK when she was upset during booking. Ms. Pitts argues that her behavior was similar to that of another corrections officer who received only a verbal warning for hugging inmates.

After her termination, Ms. Pitts did file a discrimination charge against the

5

Sheriff's Department with the Equal Employment Opportunity Commission. The EEOC dismissed Ms. Pitts' charge on February 9, 2006. Ms. Pitts never filed an EEOC complaint against Elkhart County.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to

accept its version of events.'" (*quoting* <u>Schacht v. Wisconsin Dep't of Corr.</u>, 175 F.3d 497, 504 (7th Cir. 1999)).

> [T]he plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element with respect to which she has the burden of proof.

<u>Celotex v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

Elkhart County first argues that it is not the correct party to sue in this action. Elkhart County states that this case involves claims based upon alleged actions of the Elkhart County Sheriff Michael Books and his employees. Ms. Pitts has presented no evidence showing that Elkhart County had any authority to act in any manner affecting her employment or termination within the Sheriff's Department. Elkhart County argues that the Elkhart County Sheriff's Department has no agency relationship with the County and instead has its own separate legal existence apart from Elkhart County.

In response to this argument, Ms. Pitts filed a motion to amend seeking to substitute as a defendant the Elkhart County Sheriff's Department. Ms. Pitts argues that when she filed her initial complaint alleging violations of section 1981, she named the Elkhart County Sheriff's Department as a co-defendant. On March

16, 2005, the Sheriff's Department filed a Motion to Dismiss relying on <u>Jones v. Bowman</u>, 694 F.Supp. 538, 544 (N.D. Ind. 1988), for the proposition that the sheriff's department has no separate existence and is therefore not a suable entity. Ms. Pitts then filed an amended complaint, dismissing her claim against the Sheriff's Department and naming Elkhart County as the sole defendant in this matter.

After the <u>Jones</u> decision, the United States Supreme Court decided <u>McMillian v. Monroe County</u>, which concluded that §1983 liability for local governments "is dependent on an analysis of state law". 520 U.S. 781, 786 (1997). Local liability under Indiana law was addressed in <u>Argandona v. Lake County Sheriff's Department</u>, No. 2:06cv259, 2007 WL 518799 (N.D. Ind. February 13, 2007), which held that under Indiana law the sheriff's department is an independent suable entity. Arguing that this gray area in the law was only recently clarified, Ms. Pitts moved to amend her complaint to substitute the Elkhart County Sheriff's Department as a defendant.

Magistrate Judge Nuechterlein denied this motion, stating that Ms. Pitts should have been aware of the <u>McMillian</u> decision and that in the state of Indiana a sheriff's department has long been recognized as an independent office. When she amended her complaint to dismiss the Sheriff's Department, Ms. Pitts should have known that the Sheriff's Department was at least possibly a suable entity. Judge Nuechterlein also found that to add the Sheriff's Department as a defendant at this point would be prejudicial since such a shift would require defense counsel

8

to conduct more discovery to properly prepare this case for adjudication. Substituting the parties at this late stage would also shift the focus of the motion for summary judgment making it either inapplicable or moot. Judge Nuechterlein concluded by stating that "allowing Pitts to amend her complaint at this late phase of the litigation is an impediment for the parties in completing the next stage of this litigation and sends this case backwards on the litigation track." The court held that Ms. Pitts had not established good cause to amend her complaint.

Judge Nuechterlein issued that order on August 7, 2007. Ms. Pitts filed no objection. Under Federal Rule of Civil Procedure 72(a), a party may serve and file objections to a magistrate judge's order within ten days after being served with a copy. If an objection was not timely made, a party may not thereafter assign as error a defect in the magistrate judge's order. Id. Since no objection was made, this court may not now consider Ms. Pitts' request to substitute the Elkhart County Sheriff's Department as a defendant and must instead decide whether Elkhart County is a proper defendant in this action.

In Argandona v. Lake County Sheriff's Department, the plaintiff filed a §1983 claim alleging that a Lake County police officer physically battered him after ordering him to stop his vehicle. 2007 WL 518799, *1. The plaintiff alleged that Lake County, through its Sheriff's Department, failed to train the officer properly and was aware of the officer's propensity for using unreasonable force. Id. The court found that states have wide authority to set up their state and local governments as they desire. Id. at *2.

9

In Indiana, the sheriff's office is independently established under the state constitution and headed by an independently elected sheriff. IND. CONST. Art. 6 § 2; Argandona, 2007 WL 518799 at *3. As an independent elected official, the sheriff is answerable to the voting citizens, not the county council or a county board of commissioners. Argandona, 2007 WL 518799 at *3 (*citing* Markley v. Walters, 790 F.Supp. 190, 191 (N.D. Ind. 1992)). The Indiana General Assembly established the sheriff department's duties and responsibilities. Argandona, 2007 WL 518799 at *3. Given the sheriff's department's independence from the county, the court found that "[b]ecause a county has no agency relationship with a sheriff or the sheriff's department, a county cannot be held liable under a *respondeat superior* theory for the actions of a sheriff or a sheriff's department." Id. at *3. *See also* Hupp v. Hill, 576 N.E.2d 1320, 1326 (Ind. Ct. App. 1991) ("It is well settled that Indiana Sheriffs are not subject to the control or authority of the County Commissioners of the county in which they hold office.").

Elkhart County argues that the same principles leading the Argandona court to its holding apply to Title VII liability. Title VII only covers an "employer," and the Sheriff, not Elkhart County, was Ms. Pitts' employer. Carver v. Sheriff of LaSalle County, Ill, 243 F.3d 379, 381 (7th Cir. 2001). The Sheriff of Elkhart County has the statutory duty to run the county jail. IND. CODE §36-2-13-5(a)(7). Elkhart County argues that part of the Sheriff's responsibility to run the jail necessarily includes control over the corrections officers that staff the jail. This control is shown by Sheriff Books' having made the ultimate decision to terminate

Ms. Pitts' employment after an internal affairs investigation conducted within the Sheriff's Department. Elkhart County also points to Ms. Pitts' EEOC charge where she only named the Elkhart County Sheriff's Department as her employer as support for this contention. For these reasons, Elkhart County argues that Ms. Pitts' claim is rightly against the Sheriff's Department and her claim against Elkhart County should be dismissed.

The court agrees that the <u>Argandona</u> analysis applies here. The Elkhart Sheriff's Department is its own entity established by the state constitution. The Sheriff of Elkhart County is responsible for running the local jail. The investigation into Ms. Pitts' alleged improper conduct and subsequent termination decision were handled within the confines of the Sheriff's Department with no input from Elkhart County. Elkhart County is an improper defendant in this action and is entitled to summary judgment on this basis.

Elkhart County's motion for summary judgment (Doc. No. 69) is GRANTED and its second motion for leave to file excess pages (Doc. No. 67) is DENIED as moot.

SO ORDERED.

ENTERED:   November 2, 2007

                                              /s/ Robert L. Miller, Jr.
                                              Chief Judge
                                              United States District Court